MORGAN, LEWIS & BOCKIUS LLP
Brent A. Hawkins, CA Bar No. 314266
One Market
Spear Street Tower
San Francisco, CA  94105-1596
Tel:   +1.415.442.1000
Fax:   +1.415.442.1001
brent.hawkins@morganlewis.com

Aliza R. Karetnick (*pro hac vice* forthcoming)
2222 Market Street
Philadelphia, PA 19103-3007
Tel:   +1.215.963.5000
Fax:   +1.215.963.5001
aliza.karetnick@morganlewis.com

*Attorneys for Plaintiff*
*Manus Bio Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUS BIO INC., <br><br> Plaintiff, <br><br> vs. <br><br> SWEEGEN, INC., <br><br> Defendant. | Case No. 8:24-cv-01921 <br><br> **VERIFIED COMPLAINT AND JURY DEMAND** |

## VERIFIED COMPLAINT

1.      Plaintiff Manus Bio Inc. ("Manus") hereby files this verified complaint against Defendant Sweegen, Inc. ("Sweegen"), alleging as follows:

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## Nature of Action

2.     Manus brings this action against its competitor, Sweegen, for trade libel; libel per se; tortious interference with contractual relations; tortious interference with prospective business relations; violation of the Lanham Act, 15 U.S.C. § 1125; and violation of the California Business and Professions Code Section 17200, in connection with Sweegen's publication and dissemination of knowingly false statements about Manus' products and business practices to the general public, as well as directly to Manus' customers and commercial stakeholders.  Sweegen's conduct is irreparably damaging and, unless enjoined, will continue to harm Manus' business reputation and goodwill.

## Parties

3.     Manus is a biotechnology company incorporated in the State of Delaware, with its principal place of business in Waltham, Massachusetts.

4.     Sweegen is a food and beverage company incorporated in the State of Nevada, with its principal place of business in Foothill Ranch, California.

## Jurisdiction and Venue

5.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331.  This Court has supplemental subject matter jurisdiction over Manus' state law claims pursuant to 28 U.S.C. § 1367(a), since they are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.  Diversity jurisdiction also exists pursuant to 28

U.S.C. § 1332 because Manus is a citizen of the State of Delaware and Commonwealth of Massachusetts, Sweegen is a citizen of the States of Nevada and California, and the amount in controversy exceeds $75,000.

6.     Sweegen is subject to personal jurisdiction in this district by virtue of its presence in the State of California, in which it conducts business; having availed itself of the rights and benefits of California law such that it should reasonably anticipate being hauled into court in this judicial district; having engaged in systematic and continuous contacts with the State of California, and in particular within this judicial district; from the receipt of revenue from goods used or consumed or activities conducted in the State of California and in this judicial district.

7.     Venue is appropriate in this district under at least 28 U.S.C. § 1391(b)(1) and (2) because Sweegen is resident in, and the harm emanates from, the Central District of California.

### Statement of Facts

*Manus Bio Inc.*

8.     Manus is a world leading biochemical engineering company founded in 2011 by Dr. Aji Parayil, Dr. Greg Stephanopoulos, and a group of scientists from the Massachusetts Institute of Technology.  Dr. Parayil now serves as the company's Chief Executive Officer.

9.     Manus' cutting-edge biotechnology research and development facility

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 3 -

is located in Waltham, Massachusetts.

10.    Manus' production facility, located in Augusta, Georgia, was acquired in July 2018, when Manus purchased the assets of the NutraSweet Company. Manus has invested tens of millions of dollars to improve and upgrade the plant where Manus' stevia sweetener, NutraSweetM Natural® ("NutraSweetM"), is produced.

*Manus' Technology*

11.    Manus engineers microorganisms and enzymes for the production of natural complex molecules, including those with high value in the food, beverage, and flavor industries, among others.

12.    Many of these natural complex molecules are conventionally extracted from plants, which have increasingly unstable supply.  Production from these sources has negative environmental impacts.

13.    Manus' technology enables the production of these molecules in cost-effective, reliable, and sustainable ways.

*Manus Uses Bioconversion to Produce NutraSweetM Natural®*

14.    At the time of its founding, Manus was primarily developing a platform for microbial fermentation, in which engineered microbial cells produce a desired chemical from basic carbon sources fed to the bacterial cell culture, such as glucose.

15.    In view of the industry need for sources of high intensity sweetener,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

COMPLAINT AND JURY DEMAND

Manus also developed a bioconversion process for producing stevia sweetener (and specifically Rebaudioside M or "Reb M"), including the product NutraSweetM, of which Reb M is the main component.

16.    Reb M is a natural, no-calorie sweetener that has broad applicability and is regularly purchased by manufacturers in the food and beverage industry for use in consumer goods such as in sodas, sports drinks, dairy, confections, baked goods, and snack bars, among others.

17.    Rebaudiosides, which are more than 200 times sweeter than sucrose, are steviol glycosides found in the stevia plant, *Stevia rebaudiana*.

18.    While other rebaudiosides can be associated with unpleasant, often bitter, aftertastes, Reb M has a taste profile that more closely mirrors that of sucrose. But Reb M exists in such low levels in the stevia plant and in stevia extract that it is impractical to commercialize Reb M by mere extraction from the stevia plant.

19.    In or around 2013, Manus began developing a process to create Reb M through fermentation. The Manus fermentation program was the subject of a PCT Application filed by Manus in 2015, which is published as WO 2016/073740 A1.

20.    In or around 2018, Manus shifted its focus to developing a process to produce Reb M through bioconversion, which had the potential for earlier commercialization.

21.    Manus established proprietary technology to produce Reb M through

bioconversion using an engineered bacterial strain that expresses UDP-dependent glycosyl transferase enzymes (UGT enzymes) that transform steviol glycoside molecules abundant in stevia leaf extract to the rarer steviol glycoside molecule Reb M.

22.     In practice, stevia leaf extract is added to the bacterial strain in Manus' Augusta facility's bioreactors, resulting in Reb M, which is then purified from the culture.  Manus' Augusta manufacturing facility is Safe Quality Food certified and has successfully passed audits by the Georgia State Department of Agriculture and the United States Food and Drug Administration.

23.     Manus' bioconversion method, as well as certain bacterial strains and enzymes used in the bioconversion process, are more fully described in Manus' U.S. Patent Nos. 11,168,309 (issued Nov. 9, 2021), 11,230,724 (issued Jan. 25, 2022), 11,788,070 (issued Oct. 17, 2023), and 12,012,626 (issued June 18, 2024), copies of which are attached as Exhibits A–D.

*Sweegen, Inc.*

24.     Sweegen is a direct competitor of Manus in the stevia sweetener market.

25.     Sweegen maintains a Signature Stevia portfolio.  The portfolio includes Reb M, among other varieties of stevia sweeteners.

26.     Historically, Sweegen produced Reb M in China and, upon information and belief, continues to do so today.

27.     Sweegen "previously manufactured electronic devices, but abandoned this business" after being acquired in 2014 "and began producing stevia-based sweeteners." *Sweegen v. Chen*, No. G059226, 2021 WL 2657016, at *2 (Cal. Ct. App. June 29, 2021).

28.     "Due to this change in business, SweeGen did not have any revenue or employees after its acquisition until late 2017." While Sweegen "nearly doubled its gross revenues from 2017 to 2018 . . . an income statement for the fiscal year ending June 2019 shows SweeGen was operating at a net loss in the millions." *Id.*

29.     Sweegen's majority shareholders are a married couple, Steven and Min Chen (also known as Diana). *Id.* Mr. Chen serves as Sweegen's Chief Executive Officer.

30.     Mr. Chen has founded and controlled "several other entities," including Conagen, Inc., Phyto Tech Corp., ProTab Laboratories, Anhui Longking Biotechnology Co., Ltd., and Bug Venture LLC. *Id.* Mrs. Chen "holds a number of positions at these entities, including director of Conagen, chief operating officer of Blue California, and president of ProTab." *Id.*

*Sweegen's Defamatory Campaign*

31.     On July 10, 2024, Sweegen published a press release entitled "Sweegen Calls Out Manus Bio on False Nutrasweet Reb M Claims" (the "Press Release"). A complete copy of the Press Release is attached as Exhibit E. The Press Release is also currently posted on Sweegen's website at

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

COMPLAINT AND JURY DEMAND

https://sweegen.com/newsroom/sweegen-calls-out-manus-bio-on-false-nutrasweet-reb-m-claims.

32.    The Press Release was rife with falsehoods about Manus and its NutraSweetM product, including that Manus is "selling an *adulterated* NutraSweet® sweetener Reb M under false claims" and that "Stevia Reb M [is] sold under *false claims* intentionally."  The Press Release also asserts that purported "[f]alse claims such as those made by Manus about its NutraSweetM™ not only constitute *unfair competition* with Sweegen, but also have significant implications for food and beverage companies, consumers, and the stevia technology community" and "can lead to misjudgment, and consumers may unknowingly consume products that do not meet their dietary preferences or health needs."

33.    After publishing the Press Release on its website, Sweegen shared a link to the Press Release in a public LinkedIn post.[1]  A complete copy of the LinkedIn post, which remains active as of the date of this filing, is attached as Exhibit F.

34.    Sweegen doubled down and repeated its defamatory statements about Manus and NutraSweetM in its LinkedIn post, which can be seen by the reader without having to click on the link to the full Press Release.

35.    Sweegen also published multiple hashtags in its LinkedIn post,

---

[1] https://www.linkedin.com/posts/sweegen_sweegen-calls-out-manus-bio-on-false-nutrasweet-activity-7216856419285782528-lKU5?utm_source=share&utm_medium=member_desktop.

including "#Mislabel," "#ConsumerTrust" and "#HighQuality."

36.     At least three Sweegen employees—including the company's CEO, Mr. Chen—reposted Sweegen's LinkedIn post to their own LinkedIn accounts, further disseminating Sweegen's false and defamatory statements.[2]

37.     Contrary to the allegations in the Press Release, none of Manus' promotional materials claim that NutraSweetM is a "stevia extraction Reb M," other than as produced by a bioconversion process.  Indeed, Manus has never represented the NutraSweetM product is produced merely by extraction from stevia plants, nor has Manus ever claimed that NutraSweetM is made using any process other than bioconversion.  *See, e.g.*, Exs. G–I.

38.     No reasonable person reading Manus' promotional materials could reach any other conclusion.

39.     Furthermore, Manus' publicly available patents clearly state that NutraSweetM is produced *from* stevia extract using *bioconversion* technology.

40.     As with all food additives and ingredients producers, companies making high intensity sweeteners are required to comply with federal food labeling law, such as 21 C.F.R. 101, *et seq*.  And, GRAS (Generally Recognized As Safe) certification or *recognition* is required for any substance that is intentionally added to food, such as sweeteners.  NutraSweetM is recognized by FDA as GRAS.  *See* Ex.

---

[2] *Id.*

COMPLAINT AND JURY DEMAND

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

J (publicly available at https://www.fda.gov/media/156657/download).

41.    Because Reb M has no FDA-established standard of identity, labeling and claims display *common* or *usual* names that fairly describe the product in compliance with applicable federal law.  *See* Ex. K.

42.    Consistent with 21 C.F.R. 102.5, Manus has at times used "stevia extract Reb M" in technical specifications.  This legally compliant nomenclature does not constitute commercial speech in the first instance, but had Manus referred to its product as a "stevia extract Reb M" in promotional materials, the representation would have been accurate.  NutraSweetM is a bioconversion of stevia *extract*.  At no time has Manus used "stevia extract Reb M" in NutraSweetM promotional materials.

43.    Purporting to act as a responsible producer in the flavor and ingredient industry, Sweegen no doubt understands the distinction between commercial speech and terminology employed in technical specifications, which Sweegen intentionally conflates.

44.    Having concluded that Sweegen's allegations were meritless, Manus sent Sweegen a cease and desist demand letter on July 12, 2024.  A complete copy of the July 12, 2024 letter is attached as Exhibit L.

45.    In that July 12, 2024 letter, Manus demanded Sweegen end all false and defamatory publications and statements; retract the Press Release and all accompanying communications made to Manus and Sweegen customers and

commercial stakeholders; and remove the Press Release and related links from all online and social media sites, including Sweegen's website and Sweegen's and Mr. Chen's LinkedIn pages.

46.    Manus also put Sweegen on notice that failure to take these steps would constitute the knowing and reckless publication of false and defamatory assertions of fact about Manus, its NutraSweetM product, exposing Sweegen to liability for false advertising and unfair competition under the Lanham Act, unfair and deceptive business practices, defamation, and trade libel.

47.    Sweegen responded on the same day in a belligerent letter insisting Manus recall its allegedly adulterated NutraSweetM product. *See* Ex. M.  But "adulterated" is a specific, legal term meaning a food or food additive containing a deleterious substance injurious to health, or missing valuable constituents making the food or food additive appear of greater value than it is.  21 U.S.C. § 342.

48.    Manus responded on July 14, 2024, that it was neither "selling an adulterated NutraSweet® sweetener" nor distributing Reb M under "explicit and unmistakeable [sic] false claims."  *See* Ex. N.  In the absence of any evidence to support Sweegen's false claims—because no such evidence exists—Manus informed Sweegen it considered the matter closed.

49.    On July 15 and 19, 2024, Sweegen redoubled its efforts with even more aggressive and outlandish letters newly accusing Manus of not using bioconversion to make NutraSweetM .  *See* Exs. O, P.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 11 -

50.     Like Sweegen's other claims, this accusation is untrue.  NutraSweetM is made through bioconversion of stevia extract.

51.     Manus informed Sweegen of such in a July 19, 2024, correspondence reiterating that Sweegen's assertions were knowingly false, defamatory, and frivolous, and informing Sweegen that it is directly interfering with existing and prospective business relations.  *See* Ex. Q.

52.     Sweegen then published a second Press Release (the "Press Release II") on its publicly available website on July 24, 2024.  Unsurprisingly, Press Release II, attached as Exhibit R, is also a yarn spun from Sweegen's anticompetitive imagination.

53.     In addition to linking and repeating the misrepresentations in the original Press Release, Press Release II falsely states:

a. "Manus was selling its NutraSweetM™ as 'stevia extract' with the full knowledge that such product was not made through extraction from stevia leaves."

b. "Manus has since admitted that its product is indeed not stevia extract[.]"

c. "[C]onclusive scientific evidence proves that Manus' NutraSweetM™ Reb M is made through neither extraction nor bioconversion."

d. "This is a colossal fraud foisted on the regulatory authorities and tens of millions of consumers."

COMPLAINT AND JURY DEMAND

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

54. Press Release II closed by calling for all distributors and consumer packaged goods companies—that is, Manus' customers—to "immediately recall all consumer products that contain NutraSweetM™ under false claims of extraction or bioconversion."

*Sweegen's Interference*

55. On August 16, 2024, a global buyer for a multinational food-products corporation—and one of Manus' contracted customers—emailed Manus about a "concerning alert" received from Sweegen regarding the "authenticity of your product [NutraSweet]." According to the customer, Sweegen alleged "significant discrepancies in the claims made about the production process and composition of NutraSweetM," including that it is not "derived from stevia leaves."

56. Manus responded within the hour that it was aware of false allegations made by its competitor, and assured the customer Manus stands by its product and product claims.

57. Manus received a second inquiry about Sweegen's false claims from a Fortune 100 customer that manufactures a wide range of beverages.

58. These customers, which purchased a Reb M product from Sweegen before moving their business to Manus, represent significant current and potential business for Manus. And, they remain competitive targets for Sweegen.

59. Sweegen approached these customers with its fabricated claims or intentionally made the customers aware of Sweegen's Press Releases.

60. In addition, ProTabs—a tolling manufacturer for consumer packaged goods companies—refused to purchase NutraSweetM as required by its vitamin and supplement company customer's recipe.

61. Because of Sweegen's false claims, ProTabs declined to manufacture its customer's nutritional bars using NutraSweetM, forcing the customer to find a replacement manufacturer and delaying near-term production volumes.

62. The delay in production has resulted in approximately two-tons-worth of NutraSweetM open orders sitting unfulfilled or unshipped, causing financial harm.

63. In light of these new developments, Manus sent a final cease and desist demand to Sweegen on August 21, 2024. *See* Ex. S. In addition to insisting that Sweegen stop disparaging Manus and its NutraSweetM product, Manus demanded that Sweegen disclose by August 27, 2024, all Manus customers or potential customers Sweegen contacted about the NutraSweetM product.

64. Sweegen did not cease its illegal conduct, nor did it disclose the customers it contacted about NutraSweetM, and Manus continues to suffer harm.

## **First Cause of Action: Trade Libel**

65. Manus incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

66. Sweegen's Press Releases and related false claims disparage the quality of Manus' NutraSweetM product and business conduct as a whole.

67.    Sweegen published its false claims publicly on its website, its LinkedIn, and directly to Manus customers.

68.    Sweegen's statements about Manus' NutraSweetM product were demonstrably untrue.

69.    Sweegen knew its statements about Manus and NutraSweetM were untrue, as it could and should have discovered through a search of public patents, a search of the FDA's public GRAS inventory, and as it was directly informed in Manus' repeated communications.

70.    Sweegen knew that customers might act in reliance of its false statements, resulting in significant harm to Manus.

71.    Because of Sweegen's libel, Manus has suffered and continues to suffer substantial reputational and financial damage.

72.    Sweegen's conduct was committed in bad faith with the intent and result of causing Manus' reputational and financial harm.

73.    As a direct and proximate result of Sweegen's conduct, Manus has been, and is likely to continue to be, substantially and irreparably injured in its business.  Unless enjoined by this Court, Sweegen will continue to cause Manus immediate and irreparable injury for which it has no adequate remedy at law.

## **Second Cause of Action: Libel Per Se**

74.    Manus incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

COMPLAINT AND JURY DEMAND

75.    Sweegen published the Press Releases in writing on its website, LinkedIn, and directly to actual and potential Manus customers.

76.    The Press Releases and associated statements were factually false.

77.    The Press Releases and associated statements were defamatory on their face because any reasonable reader would understand that Sweegen was accusing Manus of fraud and unfair business practices, without the need for any additional information, explanation, innuendo, or other extrinsic fact.

78.    Sweegen did not make the statements in a privileged setting, but rather published the Press Releases publicly online.

79.    Sweegen's conduct was committed in bad faith.  As a direct and proximate result of Sweegen's false statements, Manus has been, and is likely to continue to be, substantially and irreparably injured in its business.  Unless enjoined by this Court, Sweegen will continue to cause Manus immediate and irreparable injury for which it has no adequate remedy at law.

**Third Cause of Action: Tortious Interference with Contractual Relations**

80.    Manus incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

81.    Manus had a valid contract with a tolling manufacturer in the food and beverage industry ("the customer") for the purchase of NutraSweetM.

82.    Upon information and belief, Sweegen knew that Manus had a contractual relationship with the customer, and Sweegen published its false claims

COMPLAINT AND JURY DEMAND

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

about NutraSweetM to the customer with the intent of inducing the customer to cease or disrupt its relationship with Manus.

83.     After learning of Sweegen's false statements, the customer refused to accept orders for NutraSweetM.

84.     Sweegen's conduct was committed in bad faith.  As a direct and proximate result of Sweegen's tortious interference, Manus has been, and is likely to continue to be, substantially and irreparably injured in its business.  Unless enjoined by this Court, Sweegen will continue to cause Manus immediate and irreparable injury for which it has no adequate remedy at law.

## Fourth Cause of Action: Tortious Interference with Prospective Business Relations

85.     Manus incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

86.     Sweegen knew the Press Releases and related statements were factually false and damaging to Sweegen's reputation.

87.     Sweegen nonetheless intentionally disseminated its false claims to Manus customers and commercial stakeholders.

88.     Sweegen disseminated these false claims with the purpose of deterring customers from entering into transactions with Manus while encouraging them to transact with Sweegen instead.

89.     Sweegen's conduct was committed in bad faith.  As a direct and

proximate result of Sweegen's tortious interference, Manus has been, and is likely to continue to be, substantially and irreparably injured in its business. Unless enjoined by this Court, Sweegen will continue to cause Manus immediate and irreparable injury for which it has no adequate remedy at law.

### Fifth Cause of Action: False Advertising Under the Lanham Act, 15 U.S.C. § 1125

90.    Manus incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

91.    Sweegen's Press Releases constituted commercial speech because they were published with the intention of disparaging Manus and achieving an unfair business advantage.

92.    Sweegen's false claims about NutraSweetM were material because they were likely to influence customers' purchasing decisions, as shown by Manus' lost profits flowing directly from Sweegen's false statements to Manus customers and shareholders.

93.    Sweegen's false statements were not mere puffery but rather actionable statements that made claims as to the specific characteristic of Manus' NutraSweetM product—namely, that it was "adulterated" and not what Manus advertised it to be.

94.    Sweegen was aware of the material nature of its deception, as Sweegen itself acknowledged the gravity of its claims in its first Press Release:

COMPLAINT AND JURY DEMAND

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Food and beverage companies are confronted with significant challenges arising from adulteration and mislabeling, particularly the erosion of consumer trust and brand reputation. The authenticity of products is paramount to maintaining consumer confidence and loyalty, and any discrepancy between product labeling and actual content can significantly undermine trust. For companies that prioritize transparency and integrity, the risk of reputational damage is particularly acute if their products become associated with false claims.

95. In a regulated industry that prioritizes trust in product labeling, the false statements in Sweegen's Press Releases and related false claims had and have the tendency to deceive a substantial portion of these customers.

96. Sweegen caused its false statements to enter interstate commerce by publishing the Press Releases publicly on the internet and, upon information and belief, disseminating the false statements directly to Manus customers.

97. Sweegen's conduct was committed in bad faith. As a direct and proximate result of Sweegen's false advertising, Manus has been, and is likely to continue to be, substantially and irreparably injured in their business. Unless enjoined by this Court, Sweegen will continue to cause Manus immediate and irreparable injury for which it has no adequate remedy at law.

## Sixth Cause of Action: Violations of California Business and Professions Code Section 17200

98. Manus incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

99. By intentionally spreading false claims about Manus and its

NutraSweetM product to industry customers, Sweegen engaged in unlawful, unfair, and fraudulent business practices.

100.    Sweegen knew or should have known that its statements were false at the time it first published them, as the patents for NutraSweetM and Manus' FDA GRAS notice are publicly available.

101.    Sweegen continued to spread these false claims after Manus informed Sweegen that its statements were false on multiple occasions.

102.    Due to Sweegen's unlawful, unfair, and fraudulent business practices, Manus has suffered substantial losses in reputational damage and financial damage in the form of lost profits.

### **Prayer for Relief**

WHEREFORE, Plaintiff respectfully requests that this Court:

A.    Enter judgment that Sweegen has committed trade libel, libel per se, tortious interference with contractual relations, tortious interference with prospective business relations, violations of the Lanham Act, 15 U.S.C. § 1114, and violations of the California Business and Professions Code.

B.    Enter judgment against Sweegen that the above acts were willful and intentional, as well as malicious, fraudulent, and oppressive.

C.    Preliminarily and permanently enjoin Sweegen and its officers, directors, agents, employees, attorneys, successors, and assigns, and all others in active concert or participation with any of them, from:

COMPLAINT AND JURY DEMAND

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

a. Making any false or misleading claims regarding Manus or NutraSweetM;

b. Making any statements, written or spoken, that (i) Manus is engaged in misconduct regarding its labeling, advertising or representations relating to NutraSweetM, (ii) NutraSweetM is not made from Reb M, or (iii) NutraSweetM is not made via bioconversion;

c. Maintaining the Press Releases published in any print or digital format, including Sweegen's website, LinkedIn, and other social media accounts; and

d. Spreading, directly or indirectly, the claims in the Press Releases to any customers or consumers.

D.     Order Sweegen to issue a corrective press release no later than 15 days after an injunction is entered retracting its false claims about Manus and NutraSweetM.

E.     Order Sweegen to issue a corrective statement no later than 15 days after an injunction is issued to each of the customers or consumers Sweegen directly communicated its false claims about Manus and NutraSweetM.

F.     Award Manus damages in an amount to be proven at trial.

G.     Order Sweegen to account for and disgorge to Manus all profits Sweegen has secured by reason of its unlawful acts.

COMPLAINT AND JURY DEMAND

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

H.    Award treble damages resulting from Sweegen's unfair competition under the Lanham Act in accordance with the provisions of 15 U.S.C. § 1117; and award punitive damages under California law.

I.    Order Sweegen to pay Manus pre-judgment interest on all damages.

J.    Award Manus its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117 and any other applicable provision of law.

K.    Award Manus the costs of suit.

L.    Award any such other or further relief to which Manus may be entitled and as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Manus hereby demands a jury trial on all issues appropriately triable by a jury.

Dated:       September 4, 2024              MORGAN, LEWIS & BOCKIUS LLP

By */s/ Brent A. Hawkins*
_____
Brent A. Hawkins
*Attorney for Plaintiff*
*Manus Bio Inc.*

## <u>VERIFICATION</u>

I, Dr. Christine Santos, being duly sworn according to law, hereby state as follows:

1.      I am the Chief Technology Officer of Plaintiff Manus Bio Inc. ("Manus").  I am authorized to make this Verification on behalf of Manus.

2.      I have reviewed and know the allegations in the Verified Complaint ("Complaint") and verify they are true and correct to the best of my knowledge, information, and belief.

3.      I declare under penalty of perjury that the foregoing is true and correct.

_____
Christine Santos, PhD

COMPLAINT AND JURY DEMAND